*Linton v. Zorn*, **No. 22-2954**

JOSÉ A. CABRANES, Circuit Judge, concurring in part and dissenting in part:

"[Q]ualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'"[1] When it is asserted, courts ask two questions: whether the official violated a federal statutory or constitutional right, and whether that right was "clearly established" at the time.[2] Both prongs are necessary. "This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'"[3]

I concur in part. The three of us agree in Judge Sack's general restatements of the law of qualified immunity. I likewise concur that *Amnesty America v. Town of West Hartford* clearly established a right for qualified immunity purposes, consistent with our holding in *Edrei v. Maguire*.[4] I write separately to note my concern that there is growing daylight between our Circuit's holdings on qualified immunity and the clear teachings of the Supreme Court. Were it not for the confused state of our precedents, I would view this as a straightforward case. Instead, those muddled precedents complicate an otherwise clear matter. Nevertheless, I would still affirm the well-reasoned order of the District Court (Geoffrey W. Crawford, then *Chief Judge*) in favor of Sergeant Zorn.

The dispositive question here—whether *Amnesty America* clearly established law prohibiting Sergeant Zorn's challenged actions—is subtle enough that the

---

[1] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

[2] *See, e.g.*, *Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020) (discussing the "two-step framework" for evaluating claims of qualified immunity articulated by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001)).

[3] *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[4] *Amnesty America v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004); *Edrei v. Maguire*, 892 F.3d 525 (2d Cir. 2018).

District Court changed its own view as the case matured.[5] A third reading is now adopted in this appeal. We have lost our way if a police officer may be held liable for failing to understand a "rule" upon which *judges* disagree—with each other and with themselves. Such a result seems incompatible with the doctrine of qualified immunity, which limits liability to where "at the time of the officer's conduct, the law was 'sufficiently clear' that 'every reasonable official would [understand] that what he is doing' is unlawful."[6]

Critically, the facts in *Amnesty America* and *Edrei* do not at all resemble those before us. And the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality."[7] In *Amnesty America*, in addition to applying rear wristlocks, officers were alleged to have "throw[n] [a protester] face-down to the ground; dragg[ed] [another protester] face-down by his legs, causing a second-degree burn on his chest; plac[ed] a knee on [a third protester's] neck in order to tighten his handcuffs while he was lying face-down; and ramm[ed] [that third protester's] head into a wall at a high speed."[8] In *Edrei*, officers used LRADs—"acoustic weapons developed for the U.S. military" that can be "used to send out sound at a dangerously high level . . . to cause pain/hearing damage"—on allegedly non-violent protesters.[9] These were exceptional cases with

---

[5] JA335-38 ("[T]he Second Circuit's *Amnesty America* opinion established only that a use of force comparable to those used by the West Hartford police during the arrest of a nonviolent suspect are sufficient to allow a reasonable factfinder to conclude that the use of force was excessive. That falls short of clearly establishing that such force used on a nonviolent suspect was in fact excessive. To the extent that the court's November 28, 2018 Order concluded otherwise, it is corrected here." (quotation marks and citation omitted)).

[6] *Wesby*, 583 U.S. at 63 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

[7] *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *al-Kidd*, 563 U.S. at 742). And where the law is unclear, "qualified immunity protects actions in the 'hazy border between excessive and acceptable force.'" *Id.* at 18 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004)).

[8] *Amnesty America*, 361 F.3d at 123.

[9] *Edrei*, 892 F.3d at 529 (quotation marks omitted).

unusual circumstances where the techniques allegedly utilized by the officers did not constitute a proportionate response to the protesters.

The case before us is not an exceptional case. It was a routine arrest and removal.[10] There is no specter of disproportionality. Video evidence shows Ms. Linton adamantly refusing to leave and resisting arrest—at one point nearly striking Sergeant Zorn in the face.[11] He had limited options at his disposal to safely navigate the situation. I agree with my colleagues, who "do not think that a reasonable juror could find that [Ms. Linton] was not resisting arrest at all when Sergeant Zorn first engaged pain compliance techniques" and acknowledge that "[a]n officer necessarily must use *some* amount of force to arrest an individual who is unwilling to comply with the officer's commands preceding the arrest."[12] I disagree with their subsequent decision to, nevertheless, send this case to a jury.

In sum, the Supreme Court has held that "[t]o be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'"[13] It is nobody's place—not ours, and not a jury's—to

---

[10] Sergeant Zorn presented expert evidence, unrebutted below, establishing that he followed normal and accepted police practices in his arrest and removal of Ms. Linton; his use of force was objectively reasonable; and the average police officer would feel such force was lawful under the circumstances. *See* JA109-119.

[11] Evan M. Eastman, Sergeant Zorn's expert, opined that Ms. Linton "pulled her hand free or nearly free" in a "classic escape from a control hold" and "her elbow came up almost striking [Sergeant] Zorn in the face." Eastman did not suggest that Ms. Linton intended to hurt Sergeant Zorn, but noted "she was pulling away aggressively enough that [Sergeant Zorn] was almost hit" and warned "[s]uch a strike could easily break the nose or even the jaw." Her flailing arm was thus "[a]t the very least . . . a potentially dangerous distraction . . . [of] concern to a reasonable officer." *See* JA113.

[12] Op. at 37-39.

[13] *Heien v. North Carolina*, 574 U.S. 54, 60-61 (2014) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)).

hold Sergeant Zorn to perfection through searching, frame-by-frame analysis of his decisions.[14] While I concur in most of Judge Sack's description of the doctrine of qualified immunity and appreciate his painstaking attempts to apply our precedents faithfully, I respectfully dissent from his reliance on *Amnesty America* and *Edrei* in the circumstances presented here.

---

[14] The Supreme Court has tightly limited post-hoc scrutiny of officers' actions, requiring courts to consider things "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," embodying "allowance for the fact that police officers are often forced to make split-second judgments" and recognizing that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," is a violation. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989) (cleaned up).